Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                          2:19-cv-01875

| | |
|---|---|
| Oscar Lopez individually and on behalf of all others similarly situated | |
| Plaintiff | |
| - against - | Complaint |
| SPC Management Co., Inc. | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      SPC Management Co., Inc. ("Swander Pace Capital" or "defendant") manufactures, distributes, imports, markets, labels and sells wafers and cookies (the "Products") through its ownership, control, and authority over Voortman Cookies Limited, a Canadian enterprise.

2.      The Voortman Cookies are available in numerous flavors and as sugar free, sold to consumers from third-party brick and mortar stores and websites.

3.      The Products highlight certain ingredients or components on the front labels such as "Baked With Real Cocoa" ("Cocoa Products"), "Baked With Real Fruit" or a particular type of fruit, i.e., "Baked With Real Bananas," ("Fruit Products")  and "Baked With Real Vanilla" ("Vanilla Products").

4.      The Cocoa Products include Chocolate & Caramel Wafers, Chocolate & Raspberry Wafers, Chocolate Mint Wafers, Chocolate Wafers, Chocolate Wafers Sugar Free, Cookies 'N

Crème Wafers, Fudge Brownie Chocolate Chip Cookies, Sugar Free Fudge Coated Chocolate

Wafers, Fudge Coated Peanut Butter Wafers, Fudge Coated Salted Caramel Wafers, Sugar Free

Fudge Coated Vanilla Wafers, Fudge Striped Shortbread Cookies Sugar Free and S'mores Wafers.

Baked With
Real Cocoa



5.      The Fruit Products include Apple Crisp Wafers, Banana Wafers, Chocolate &

Raspberry Wafers, Strawberry Wafers, and Strawberry Banana Wafers.

Baked With
Real Fruit



6.      The Vanilla Products include Vanilla Shortbread Cookies and Vanilla Wafers.

Baked With
Real Vanilla



7.    Defendant has tapped into consumer demand for "real ingredients" by promoting the products as "baked with" "real cocoa," "real vanilla" and "real fruit," as "nearly three-quarters of U.S. consumers find it important to recognize the ingredients in the products they buy."[1]

8.    An industry survey confirmed "recognition of ingredients to be one of the biggest drivers of product choice, with more than half of respondents (52 percent) considering it to be an important factor."[2]

9.    The Products' representations are misleading because despite the front-label claims of "real cocoa," "real vanilla" and "real fruit," they do not contain these components in the amount, type and/or form which a reasonable consumer would expect based on the claims.

I.   Cocoa

10.   Cocoa powder ("cocoa") is the "core of a chocolate's flavor, without any extra fat, sugar, or milk to get in the way."

11.   The "Baked with Real Cocoa" representations are false, misleading and deceptive because the ingredient lists disclose they actually contain "Cocoa Processed with Alkali."

Cocoa Processed with Alkali ("Cocoa")



INGREDIENTS: SUGAR, ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), VEGETABLE OIL (CANOLA, SOYBEAN, PALM AND PALM KERNEL), CORN STARCH, COCOA PROCESSED WITH ALKALI, SOY LECITHIN, SALT, NATURAL FLAVORS, BAKING SODA, AMMONIUM BICARBONATE. CONTAINS WHEAT, SOY.

12.   No reasonable consumer would expect cookies and wafers promoted as "baked with real cocoa" to contain or be made with alkalis, because "real" modifies "cocoa," indicating the

_____

[1] https://www.snackandbakery.com/articles/88762-clean-label-snacks-and-bakery-move-from-novelty-to-mainstream
[2] https://www.foodinsiderjournal.com/clean-label/75-consumers-will-pay-extra-clean-label-ingredients

cocoa powder is included in its most simplified and bare form, *without* alkalis, which is readily available.

13.   Cocoa powder results from crushing the edible portions of the cocoa bean – "nibs" – into a fine paste, releasing and melting the nibs' fat content (cocoa butter).

14.   the combination of crushed, ground nibs and cocoa butter produces chocolate liquor.

15.   The chocolate liquor is pressed between hydraulic plates to form hard-cocoa "press cakes" and the excess cocoa butter is removed.

16.   The cocoa cakes are grated into fine powders.

17.   The types of powders produced are based on the amount of cocoa butter, or fat, remaining in the powder: high or "breakfast cocoa" (22% +), medium or "cocoa" (10-12%) and lowfat cocoa (less than 10%).

18.   The cocoa powder can be further treated through alkalization ("Dutch-process" or alkalized) or sold for use in its non-alkalized state.

19.   The use and presence of alkalis reduces the acidity of cocoa powder, giving it a noticeably darker hue but detracting from the "real cocoa" taste.

Non-Alkalized                             Alkalized

20.   The claim of "baked with real cocoa" is intended to differentiate the cocoa in the

Products from other cocoa ingredients bearing the standard cocoa designation, i.e., "cocoa" or "cocoa processed with alkali," and imply *this* cocoa is nutritionally and organoleptically superior.[3]

21.    Because cocoa is a commonly used and valued product, consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label.

22.    It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following.

23.    The Products' use of the optional alkali ingredients significantly distinguishes its cocoa component from cocoa powder which does not contain alkali.

24.    The presence or absence of alkalis effect the taste and color of the cocoa powder to such an extent that they are a characterizing feature and effect whether it will be purchased.

25.    Though it may be duplicative and unnecessary to indicate the presence of all optional ingredients used in standardized foods wherever the affected ingredient is declared, other than the ingredient list, this is not the case where an optional ingredient (alkali) is characterizing towards the affected ingredient (cocoa).

26.    The representation "real cocoa" is false, deceptive and misleading because consumers expect "real cocoa" to indicate a higher quality cocoa than had the ingredient merely been accurately identified as "cocoa," the term for when it's between 10 and 22 percent.

27.    By misrepresenting medium fat cocoa as "real cocoa," consumers will expect the cocoa powder component to be nutritionally and organoleptically superior than it actually is.

28.    Such a type of higher fat cocoa – above 22 percent – is referred to as breakfast cocoa, which has a more intense "chocolate-y" flavor.

---

[3] 21 C.F.R. §130.11   Label designations of ingredients for standardized foods.

## II.  Real Vanilla

29.    The representation "baked with real vanilla" is false and misleading because the ingredient list indicates the Vanilla Products contains "natural flavor" which does not include vanilla, vanillin or vanilla flavor.

Natural Flavors ("Vanilla")

**INGREDIENTS**

Vegetable oil (canola, soybean, palm and palm kernel), sorbitol, enriched wheat flour (wheat flour, malted barley flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), maltodextrin, corn starch, salt, soy lecithin, natural flavor, aspartame (Phenylketonurics: contains phenylalanine), baking soda, ammonium bicarbonate

30.    Consumers value the representation "Baked With Real Vanilla" because studies have found that real vanilla simulates a creamy texture, satisfying consumers' needs for consumption of fat-rich foods, without the actual fat and calories.

31.    Consumers value vanilla because it is the ideal combination of spice and sweet – contrary to its dictionary definition of "plain."

## III. Real Fruit

32.    The "baked with real fruit" representations are false and misleading because their ingredient lists disclose the presence of "dried fruit," whether strawberries, bananas, lemons, etc.

Dried Fruit ("Fruit")

**Ingredients**

Sugar, Enriched Wheat Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Vegetable Oil (Canola, Soybean, Palm And Palm Kernel), Corn Starch, Dried Strawberries, Dried Bananas, Soy Lecithin, Natural Flavor, Salt, Citric Acid, Baking Soda, Ammonium Bicarbonate.

33.     Consumers value products purporting to contain fruit due to their many nutrients and health-promoting effects.

34.     However, the dehydration of the fruits causes their sugar content – previously dispersed in a high-water content fruit – to be concentrated.

35.     This provides the sugar from the fruit but because it is delivered to the body without the roughage and water which would accompany the consumption of that fruit if it were whole and in raw form, its nutritional benefits are greatly diminished.

36.     The Products contain other representations which are misleading and deceptive.

37.     As a result of the false and misleading labeling, defendant sold the Products at a premium price – no less than $4.19 per 14.1 oz, excluding tax – compared to other similar products which are represented in a non-misleading way.

Jurisdiction and Venue

38.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

39.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

40.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

41.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

42.     A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

7

43.    Plaintiff is a citizen of Suffolk County, New York.

44.    John and Jane Doe plaintiffs are citizens of the other 49 states.

45.    Defendant is a California corporation with a principal place of business in San Francisco, California.

46.    During the class period, plaintiff purchased one or more Products for personal consumption with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within this district and/or state.

47.    Plaintiff paid this premium because prior to purchase, plaintiffs saw and relied on the misleading representations.

48.    Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

49.    The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products subject to the actionable representations during the statutes of limitation.

50.    A class action is superior to other methods for fair and efficient adjudication.

51.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

52.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

53.    Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

8

54.     Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

55.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

57.     Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

58.     Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

59.     Plaintiff and John and Jane Doe plaintiffs, representing the forty-nine (49) other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all fifty (50) states.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and  Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j.   Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.   Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

10

x.   Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

60.   Defendant's representations and omissions are false, unfair, deceptive and

misleading and are not unique to the parties and have a broader impact on the public.

61.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

62.   Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

63.   The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

64.   Plaintiff incorporates by references all preceding paragraphs.

65.   Defendant misrepresented the substantive, health, quality and nutritional attributes of the Products' composition.

66.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

67.   This duty is based on defendant's purported position as a self-designated learned intermediary and an entity which has held itself out as having special knowledge in the production, service and sale of the product type.

68.   Defendant negligently misrepresented and/or negligently omitted material facts.

69.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

70.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

12

71.   Plaintiff incorporates by references all preceding paragraphs.

72.   Defendant sells cookies and wafers with characterizing "real" ingredients, purporting to be the ingredient type in its most basic form available such that it can be functionally included in the Products.

73.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, organoleptic, sensory, physical and other attributes which they did not.

74.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

75.   The Products were not merchantable in their final sale form.

76.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

77.   Plaintiff incorporates by references all preceding paragraphs.

78.   Defendant's purpose was to mislead consumers who seek products which feature "real" ingredients – "real" referring to the ingredient in its least modified form such that it can be incorporated into a final product.

79.   Defendant's intent was to secure economic advantage in the marketplace against competitors.

80.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

13

81.   Plaintiff incorporates by references all preceding paragraphs.

82.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   April 1, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
Joshua Levin-Epstein

14

2:19-cv-01875
United States District Court
Eastern District of New York

Oscar Lopez individually and on behalf of all others similarly situated

Plaintiff

- against -

SPC Management Co., Inc.

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 1, 2019

/s/ Spencer Sheehan
Spencer Sheehan